# EXHIBIT "1"

## UNSWORN DECLARATION OF MONTE B. TUCKER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 10-41521 |
| DIABETES AMERICA, INC., | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |

**UNSWORN DECLARATION OF MONTE B. TUCKER IN SUPPORT OF DEBTOR'S MOTION FOR AUTHORITY TO (A) EMPLOY HEALTHCARE MARKETS GROUP AS FINANCIAL ADVISORS AND TO PROVIDE INTERIM MANAGEMENT ASSISTANCE: AND (B) DESIGNATE MONTE B. TUCKER AS CHIEF RESTRUCTURING OFFICER**

I, Monte B. Tucker, declare under penalty of perjury,

1. I am a Managing Director of HealthCare Markets Group ("HMG"), a financial advisory firm in Houston, Texas which focuses on providing consulting services to the healthcare industry. I am authorized to make this unsworn declaration (the "Declaration") in support of the Motion for Authority to: (A) Employ HealthCare Markets Group as Financial Advisors and to Provide Interim Management Assistance and (B) Designate Monte B. Tucker as Chief Restructuring Officer (the "Motion"), which was filed on December 21, 2010, by Diabetes America, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2. Subject to this Court's approval and pursuant to terms explained in the Motion and that certain engagement letter, effective December 20, 2010 (the "Engagement Letter"), by and between the Debtor and HMG, a draft of which is attached hereto as Exhibit "A," I have agreed to act as the Debtor's Chief Restructuring Officer (the "CRO").

3. As set forth in the Motion, HMG and I have considerable experience in matters in the health care industry including matters of this nature, and are well-qualified to represent the Debtor in connection with this case due to our collective expertise in providing financial advisory services and serving in management roles. I am a Principal of HMG and entered health care industry in the early 70's, having served in various senior management positions of national healthcare firms. I have served as an executive of several health care organizations ranging from start-ups to turnaround projects in complex medical markets including long term acute care, home health care, management information systems, outpatient diagnostic imaging and ambulatory surgery centers. During my career, I also have sponsored the acquisition, development or divestiture of acute care hospitals, outpatient rehabilitation centers, cancer treatment centers and medical office buildings and participated in an advisory role to leading healthcare companies for M&A activities, market strategies, restructuring and turnaround strategies, facility planning, joint ventures and strategic plans. Mr. Francis J. Curry, another Principal of HMG who has been assisting the Debtor, has spent the last 20 years in the health care industry assisting corporations with the assessment of their business models and operations to increase shareholder value. Among other things, Mr. Curry has performed this work for start-up, spin-off, Fortune 500, and some of the industry's leading healthcare companies focusing on areas for expansion and bottom-line improvement.

4. To the best of my knowledge, HMG and its professionals are "disinterested persons" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, because HMG:

   a. Is not a creditor, equity security holder or insider of the Debtor;

    b. Is not and was not an investment banker for any outstanding security of the Debtor;

    c. Has not been, within three years before the date of the filing of the Debtor's chapter 11 petition, an investment banker for a security of the Debtors; and

    d. Was not, within two years before the filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor or any investment banker as specified in subparagraphs (b) or (c) of this paragraph.

5. In addition, to the best of my knowledge and based upon the results of the relationship search described herein, HMG neither holds nor represents an interest adverse to the Debtor within the meaning of § 327(a) of the Bankruptcy Code.

6. Except as disclosed in this Declaration, neither HMG nor its professionals hold or represent any interest adverse to the Debtor with respect to any matter on which HMG is to be employed. This Unsworn Declaration discloses any prior connections of HMG to the Debtor, creditors, other parties in interest, or their respective attorneys and accountants, as material to any adverse interest analysis under section 327(a) of the Bankruptcy Code.

7. I have reviewed, or other HMG personnel under my supervision and direction have reviewed, the Debtor's book and records and identified parties in interest in this case for purposes of a conflict check. I have submitted or caused to be submitted for review under HMG's conflict check system those parties listed on Exhibit "B" hereto to determine if any of them are present or recent former clients of HMG. Upon such review, HMG found that it is not involved in any matters with the potential creditors of the Debtor.

8. One or more of the parties identified in Exhibit "B" may be creditors in other cases in which HMG is involved. Also, HMG professionals may hold as investments in their portfolios, from time to time, certain minor equity or bond interest in public firms who also may be a party in interest in these cases. However, the matters involving such potential creditors do not relate in any way to the Debtor's bankruptcy case nor do I believe HMG's representation related to any creditors in any way conflicts with the services that HMG and I have provided and will provide to the Debtor in the Bankruptcy Case.

9. To the best of my knowledge, no one within HMG has any connection to the United States Trustee or any person employed in the Office of the United States Trustee in this District. In addition, no one within HMG has any connection with the Judge Marvin Isgur and his staff.

10. HMG's first contact with the Debtor concerning the services contemplated by the HMG Engagement Letter, occurred on or about October 2010.

11. HMG rendered other services in connection with the Bankruptcy Case for the Debtor within one year prior to the instant petition. Within that time frame, HMG billed approximately $156,000 in fees to the Debtor for assistance in contemplation of or in connection with the Bankruptcy Case, all which amount has been paid by the Debtor.

12. As of the Petition Date, no unpaid fees were due by the Debtor to HMG.

13. HMG did not receive a retainer prepayment for any services performed as contemplated by the Engagement Letter.

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** this 21st day of December, 2010.

_____
Monte B. Tucker

# EXHIBIT A

## HealthCare Markets Group

| | | |
|---|---|---|
| INVESTMENT BANKING<br>SINCE 1984 | 22722 Trailwood Lane<br>Suite 300<br>TOMBALL, TEXAS 77375 | TELEPHONE (713) 629-6070<br>FACSIMILE (713) 629-6079<br>www.healthcaremarkets.com |

December 10, 2010 *Via Email*

Board of Directors
DiabetesAmerica, Inc.
11321 Fallbrook Drive
Houston, Texas 77065

Re: Letter of Agreement – Role as Chief Restructuring Officers and Financial Advisor

Ladies and Gentlemen:

We are writing this letter to confirm our agreement (the "Agreement") that DiabetesAmerica, Inc. (hereinafter referred to as "DA", "Company", or the "Debtor") in a Chapter 11 case in the United States Bankruptcy Court for Southern District of Texas, will engage HealthCare Markets Group (hereinafter referred to as "HMG") to provide financial and restructuring advisory services and to serve as Chief Restructuring Officer on behalf of the Company. HMG's primary responsibility will include, but not limited to, providing turnaround and crisis management services, providing executive management leadership, analyzing, assisting, developing and implementing a financial restructuring plan involving the Company, negotiating a plan of reorganization with its creditors, if necessary selling the Company's assets, and/or on a "best efforts" procurement of debtor-in-possession and primer financing for the Company and, as necessary, obtaining, negotiating, and implementing exit and growth capital, based on objectives defined in the Plan.

This Agreement shall become effective as of December 20th, 2010 upon the execution hereof by both the Company and HMG, and if necessary the approval of the Bankruptcy Court, and shall terminate at any time after thirty (30 days) upon reasonable notice by the Company or HMG, subject to Bankruptcy Court approval. This Agreement shall supersede any previous agreements executed by the Company. Neither termination nor completion of this assignment shall effect: a) any compensation earned by HMG up to the date of termination; b) any compensation which HMG is otherwise entitled to hereunder; c) the reimbursement of expenses incurred by HMG up to the date of termination; d) the attached indemnification provisions, which are incorporated herein, all of which shall remain in full force and effect.

428500.1

DiabetesAmerica, Inc.
December 20th, 2010

OUR UNDERSTANDING OF THE SITUATION

DA is a Houston-based disease management and development company specializing in the diabetes segment of the healthcare market. As of December 7, 2010 DA has seventeen (17) facilities in Texas and Arizona subsequent to the review of the entire portfolio and closure of one facility.

HMG has been engaged with DA for the past fourteen (14) months providing on-site interim financial consulting services, including assistance with the reorganization of the billing and collections function and assisting DA with an attempt to restructure the senior debt held by MetroBank. Lately, HMG has been assisting DA in the process of developing and implementing a reorganizing plan and downsizing the Company.

PROFESSIONAL FEES AND EXPENSES

Subject to approval by the United States Bankruptcy Court, and pursuant to the provisions of the Bankruptcy Code and Rules:

I. The Company shall pay HMG an hourly fee of $275 ("Hourly Fee") beginning December 20, 2010 with a weekly maximum compensation on hourly fees of $4,500 per week.

II. In addition to the Hourly Fee, the Company shall pay HMG a Financing Fee (the "Financing Fee") as described in Table 1 below, of the aggregate amount of any Financing from a HMG identified Source that is not identified on Schedule 2 of the Aspen Advisor Agreement, whether it is debtor-in-possession ("DIP) and/or primer financing. The Financing Fee will be paid out of the proceeds of the Financing.

III. In addition to the Hourly Fee, the Company shall pay HMG a Performance Fee (the "Performance Fee") which will be awarded to HMG assuming the Company exits Chapter within 24 weeks from the day of filing as a going concern as defined by GAAP. The Performance Fee will consist of two separate payments, one in stock and one in cash. The cash portion of the performance fee will be in the amount of $150,000. The equity portion of the Performance Fee shall be determined by agreement of the Board of Directors of the Company and HMG and will represent a percentage of the Company's post exit common equity, adjusted for any dilution caused by an equity financing. The cash portion is subject to a reduction of $10,000 a month for every month past week 24 that DA does not exit bankruptcy. The maximum the cash portion can be reduced is $30,000.

IV. In addition to the Hourly Fee and the Financing Fee, the Company shall pay HMG a Transaction Fee (the "Transaction Fee"), if the Company completes a Sale Transaction with a HMG identified Source, that is not indentified on Schedule 2 of the Aspen Advisors Agreement, HMG shall receive a fee in immediately available

DiabetesAmerica, Inc.
December 20th, 2010

> funds upon the Closing of such Transaction equal to six percent (6%) of the Value of the Transaction (as defined below). Value of the Transaction is defined as the total proceeds and any other consideration (including cash, promissory notes, securities, property or any indebtedness for borrowed money assumed as part of the Transaction) paid by the purchaser as part of such Transaction. In the event that the aggregate consideration for the Transaction consists in whole or in part of securities, for the purposes of calculating the amount of aggregate consideration, the value of such securities will be the average of the closing prices of such securities for the five consecutive trading days preceding the closing of the Transaction; or, in the absence of a public trading market, the fair market value thereof as the Company and HMG agree on the day preceding the consummation of the Transaction. If a Transaction results in equity or assets being retained by existing equity holders or affiliates of the Company, the Value of the Transaction shall also include the value of the retained equity or assets. Notwithstanding anything contained herein to the contrary, thefollowing items shall not increase, decrease or be taken into account when determining the Value of the Transaction: (i) compensation for employment of any employee or officer of the Company or (ii) adjustments for working capital.

V. In addition if the Company completes an Equity Financing or Debt Financing with and HMG identified Source, HMG shall receive an additional transaction fee consisting of warrants to purchase the Company's Common Stock so that, after giving effect to such financing, HMG shall hold warrants equal to four percent (4%) of the fully diluted Company common stock. The strike price with respect to any warrants so issued shall be equal to the price per share of such completed financing or, in the event such financing does not involve any equity, then the fair market value of such four percent (4%) interest as agreed to by the Company and HMG or as determined by arbitration pursuant to this Agreement. The warrants shall have a ten-year term with customary rights including, but not limited to, anti-dilution provisions and registration rights.

### TABLE 1 – CALCULATION OF HMG SUCCESS FEES

|  |  | Percentage Due at Closing |
|---|---|---|
| Financing Fee | Debt | 3.0 % |
| Transaction Fee | Equity | 6.0% |
|  | Warrants | 4.0 % |

Upon termination of this agreement and for twelve (12) consecutive months thereafter, DA would pay to HMG a Success Fees on Sources identified by HMG and worked, which subsequently provide funding to DA and/or affiliates.

DiabetesAmerica, Inc.
December 20th, 2010

HMG shall waive the customary nonrefundable retainer of ten thousand dollars ($10,000).

In addition to the compensation paid as outlined above, the Company agrees to reimburse HMG for all reasonable out-of-pocket expenses incurred by HMG in carrying out the terms of this Agreement, including communication charges, travel expenses, telephone, postage, copy expenses, delivery and distribution charges and such other reasonable costs and expenses incurred by HMG in the performance of the duties as Chief Restructuring Officers, members of the Executive Management team and the Company's Financial Advisors. All reimbursements shall be made promptly after such payments accrue and are submitted to HMG with appropriate documentation for the payment hereunder.

All compensation and reimbursement of expenses are subject to prior approval of the Bankruptcy Court in accordance with the Bankruptcy Code. The Debtors will seek an order from the Bankruptcy Court to have the non-accrued portion of the Hourly Fees of HMG be paid on a weekly basis. Payment of all fees and expenses incurred under this Agreement, are solely the responsibility of the Company.

INDEMNIFICATION

The Company shall seek Bankruptcy Court approval to execute the Indemnification Agreement attached hereto as Appendix A and that the terms and conditions be incorporated herein.

If at any time after the termination of this Agreement, HMG is called upon to render services directly or indirectly relating to the subject matter of this Agreement beyond the services contemplated herein (including, but not limited to, producing of documents, answering interrogatories, giving depositions, giving expert or other testimony, whether by agreement, subpoena or otherwise), the Company shall pay HMG's then current hourly rates for the persons involved for the time expended in rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel, and all related costs and expenses, including the reasonable legal fees and expenses of HMG's counsel.

CONFIDENTIALITY OF INFORMATION

HMG acknowledges that the information furnished to it by DA or by other parties at the request of DA in connection with this engagement is proprietary and confidential. HMG agrees that the information will be used only for purposes of performing services under this advisory agreement, and none of the information will be released or distributed by HMG (or by its employees or affiliates) to any third party financing source without the prior consent of DA, unless required by law. HMG further agrees that it will not, without prior consent of DA, disclose the existence or terms of this Letter of Understanding unless required by law.

Notwithstanding the foregoing, information meeting the following criteria shall not constitute confidential and/or proprietary information: a) Information which without violation by HMG of its duties and obligations hereunder is or becomes generally known to the trade or public; (b) Information which is possessed by HMG prior to its receipt from DA or any third party, or (c)

DiabetesAmerica, Inc.
December 20th, 2010

Information which HMG later receives from another party having, to the best of HMG's knowledge, a lawful and unrestricted right to convey the information.

RESPONSIBILITY FOR ASSIGNMENT/OBLIGATION OF HMG SOLELY TO THE COMPANY

The services herein provided are to be rendered solely to the Company. They are not being rendered by HMG as an agent or as a fiduciary of the shareholders of the Company and HMG shall not have any liability or obligation with respect to its services hereunder to such shareholders or any other person, firm or corporation other than the Company.

HMG will not be responsible for independently verifying the accuracy of any information provided to HMG by the Company or its agents (the "Information") and shall not be liable for inaccuracies in any Information provided to HMG by or at the direction of the Company.

ENTIRE AGREEMENT, GOVERNING LAWS AND JURISDICTION, ETC.

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties. This Agreement cannot be terminated or changed, nor can any of its provisions be waived, except by written agreement signed by all parties hereto. This Agreement shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and HMG.

This Agreement shall be governed by and construed to be in accordance with the laws of the State of Texas applicable to contracts made and to be performed solely in such state by citizens thereof. Any dispute arising out of this Agreement shall be adjudicated by the Bankruptcy Court.

DiabetesAmerica, Inc.
December 20th, 2010

ACCEPTANCE

Please confirm that the foregoing is in accordance with your understanding by signing upon behalf of the Company and returning an executed copy of this Agreement, and thereafter submitting an appropriate application to the Bankruptcy Court seeking the retention of HMG on these terms. Any order submitted to the Bankruptcy Court in connection herewith shall be in accordance with this Agreement. A telecopy of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

| For: | DiabetesAmerica, Inc. | For: | HealthCare Markets Group |

By: _____

Name/Title: Nicholas R. Vita
            Chairman of the Board

By: _____

Name/Title: Monte B. Tucker
            Managing Director

Date: _____

Date: _____

# EXHIBIT B

Strasburger & Price, LLP
Stradling Yocca Carlson & Rauth
Porter & Hedges, LLP
Aetna Life Insurance Company
Premium Assignment Corporation
Cardinal Health, Inc.
Identity Architects
TRAVELERS
Briggs & Veselka Co.
Texas Medical Liability Trust
DiviTree
M & M Associates, Inc.
SK Interiors, Inc
Lincoln National Life
Retasure
Verizon Business
Sealy Westport Portfolio, L.P.
Southwest Signs
Dell Commercial Credit
EBK-DA, LLC
Neal Welch
Netsync Network Solutions
Neurometrix
RiverStone Wealth Management

Denly ACI Partners, Ltd.
Apelles Master Fund I, Ltd.
Longmont Capital, Ltd.
Mark and Jane Osman
John Loey
Metro Bank, N.A.
Physicians Sales and Service
Mark von Waaden
Afton Capital, Inc.

K.B. Centre, Ltd.
Venue at Hometown, Ltd.
SM Center Woodlands, Ltd.
MOB 124 of Texas, LP
Commerce Offices Park-One, LP.
PV North, LLC.
Weingarten Nostat, Inc.
Matlock Park Place

428559.1

Plazas at Callaghan Road, Ltd.
AVPE Riverway, Ltd.
Sealy & Company
Colt Ventures DCOA Houston, Ltd.
Tres Colegas Realty Partners
Colt Ventures DCOA Houston, Ltd.
WDCI, Inc. & AB Hawan Royal MacAurther, LLC.
Vantana Properties
HCA Health Services of Texas
Ventas Bayshore Medical
Townsend Crossing, LP.
SJH Medical Office Partners, Ltd.
Pruce CB Limited Partnership
Dr. Swarnjit Singh MD

428559.1